**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMANDA GARCIA, | |
| Plaintiff, | CIVIL ACTION NO. 3:14-CV-00399 |
| v. | |
| TREETOPS, INC., d/b/a THE VILLAS AT TREE TOPS, et al., | (MEHALCHICK, M.J.) |
| Defendants. | |

**<u>MEMORANDUM</u>**

Presently pending before the Court is a motion for summary judgment in the above-captioned "trip and fall" negligence action, filed by the Defendants on September 30, 2015. (Doc. 35). For the reasons stated herein, the Court will deny Defendants' motion for summary judgment. (Doc. 35).

**I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Plaintiff Amanda Garcia commenced this lawsuit on March 4, 2014, seeking damages against Defendants The Villas at Tree Tops & Fairway, The Villas at Tree Tops, Bushkill Group, Inc., Fernwood Hotel & Resort, Resorts USA, and Resorts USA, Inc., for a trip-and-fall accident she sustained while staying as a guest at The Villas at Tree Tops Resort (the "Villas"), located near East Stroudsburg, Pennsylvania, on March 17, 2012. (Doc. 1). On April 15, 2014, the parties agreed by stipulation that the correct Defendants to this action were "Resorts Group, Inc." in place of "Resorts USA, Inc.," "Treetops, Inc. d/b/a/ The Villas At Tree Tops" in place of "The Villas At Tree Tops," and "Bushkill Group, Inc." (Doc. 16). The remaining Defendants were thereby terminated from this action. (Doc. 17). On April 24, 2014, Defendants filed an answer with affirmative defenses denying liability. (Doc. 18).

The relevant facts are presented in the light most favorable to Garcia, the non-moving party. Garcia, along with her then-boyfriend, Dennis Ruiz, checked into Unit 1239A as guests at the Villas on the evening of March 16, 2012. (Doc. 37, ¶¶ 3-4; Doc. 38, ¶¶ 3-4). Unit 1239A consists of a living area on the first level and a bedroom on the second level, thus requiring guests to ascend the stairs and cross the carpeted second floor hallway to access the bedroom. (Doc. 37, ¶ 4; Doc. 38, ¶ 4). The second floor hallway contains a raised segment of carpeting that extends nearly the width of the hallway and runs adjacent to the stairwell opening (the "carpeting ripple").[1] (Doc. 38, ¶ 2). The carpeting ripple developed from stretching that occurred over the course of nineteen years of wear and tear since the carpeting was installed. (Doc. 38, ¶¶ 15, 24). Ruiz noticed the carpeting ripple shortly after checking in on the evening of March 16, 2012 and pointed it out to Garcia, who observed the carpeting ripple herself. (Doc. 37, ¶¶ 5-6, 11-12; Doc. 38, ¶¶ 5-6, 11-12). Over the course of that night and the following day, Garcia traversed the carpeting ripple three or four times when she went to and from the bedroom. (Doc. 37, ¶ 18; Doc. 38, ¶ 18). However, there is no evidence that Garcia specifically noticed the carpeting ripple on these occasions, and Garcia's expert opined that the carpeting ripple was not visible from certain angles due to shadows cast by the balcony guards. (Doc. 38, ¶ 18; Doc. 38-4, at 19).

---

[1] During her deposition, Garcia estimated that the carpeting ripple was over an inch high, while Ruiz placed the size of the carpeting ripple at roughly an inch to two inches during his deposition. (Doc. 35-8, at 35; Doc. 35-9, at 5). Garcia's expert Keith Bergman later concluded that the carpeting ripple was no larger than half an inch at its highest point, based on his investigation conducted nearly three years after the incident occurred. (Doc. 38-4, at 11).

On the evening of March, 17, 2012, Garcia's second night at Unit 1239A, Garcia awoke from a nap at approximately 10:30 pm, used the restroom, and decided to go downstairs to get a drink. (Doc. 35-8, at 21-23). As she approached the stairway entry, Garcia's right foot caught on the carpeting ripple, causing her to lose her balance and pitch forward falling into the stairwell (Doc. 35-8, at 30-32). Garcia fell towards the left side of the stairwell down several stairs, attempting to grab onto the wall but unable to break her fall because there was no handrail on that side of the staircase. (Doc. 38, ¶ 1; Doc. 35-8, at 31-32). Sensing immediately that her right leg was broken, Garcia called 911 with help from Ruiz and was rushed by ambulance to Pocono Medical Center. (Doc. 35-8, at 35-36, 40-41). In all, Garcia suffered multiple fractures that have required three surgeries to date. (Doc. 38, ¶ 1). Garcia still finds it difficult to stand for prolonged periods of time, and additionally notes that the incident has caused her significant pain and mental anguish, medical and rehabilitative expenses, and lost earnings. (Doc. 1, ¶ 38; Doc. 35-8, at 86).

On September 30, 2015, Defendants filed the instant motion for summary judgment (Doc. 35), together with a brief in support thereof (Doc. 36), and a statement of facts (Doc. 37). Garcia filed a brief in opposition to Defendants' motion for summary judgment on October 20, 2015 (Doc. 39), along with a statement of facts (Doc. 38). Having been fully briefed, this matter is now ripe for disposition.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

III.   DISCUSSION

A.   NEGLIGENCE CAUSE OF ACTION

Garcia asserts a negligence claim based on premises liability. Because the case is before this Court as a diversity action pursuant to 28 U.S.C. § 1332, Pennsylvania substantive law

applies. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 474 (3d Cir. 2001). Under Pennsylvania law, there are four elements to establish liability in tort for negligence: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006). Here, the crux of Defendants' argument in support of their motion for summary judgment is that they owed no duty to Garcia. Specifically, Defendants base their argument on the following three grounds: that (1) the carpeting ripple was not a dangerous condition; (2) the carpeting ripple was an "open and obvious" condition that Defendants did not need to warn Garcia about; and (3) Defendants did not have actual or constructive notice of the carpeting ripple. (Doc. 36, at 8-15).

### 1.   Duty of Care under Pennsylvania Law

The existence of a duty owed by a defendant is a threshold inquiry in a negligence action. In premises-liability actions, the duty of care owed by a possessor of land to an entrant upon the land depends upon whether the entrant is characterized as a trespasser, licensee, or invitee. *Guttridge v. AP Green Serv., Inc.,* 804 A.2d 643, 655 (Pa. Super. Ct. 2002). Here, it is undisputed that Garcia was a business invitee at the time of the incident at issue. Section 343 of Restatement (Second) of Torts, adopted by Pennsylvania courts, defines the duty that a possessor of property owes to an invitee. Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

### 2. Lack of Graspable Handrails

Throughout the brief in opposition to the motion for summary judgment, counsel for Garcia makes much of the fact that the staircase Garcia fell down lacked graspable handrails. (Doc. 39). Indeed, at times counsel for Garcia goes so far as to claim that Defendants' failure to provide graspable handrails constitutes an "additional defect theory," (Doc. 39, at 12), whereas on other occasions it is argued that the lack of graspable handles exacerbated the dangerousness of the carpeting ripple (Doc. 39, at 7), which is the initial defect theory Garcia raised in her complaint. Rule 8 of the Federal Rules of Civil Procedure states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). In interpreting Rule 8, the Supreme Court of the United States has found the "short and plain statement" requirement to mean that a complaint must provide a "defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

In the case at bar, Garcia makes no reference to any alleged defect involving the staircase handrails in her complaint. (Doc. 1). Indeed, the lack of graspable handrails first appears to have been identified as a defect by Garcia's expert Keith Bergman in a report dated July 31, 2015 (Doc. 38-4, at 20), and expanded upon in his supplemental report dated September 18, 2015 (Doc. 38-5, at 4-6). Thus, to the extent that Garcia now relies on the

absence of graspable handrails as an "additional defect theory," she does so without having provided Defendants fair notice in her complaint that this was a "ground[ ] upon which [her claim of negligence] rest[s]." *See Twombly*, 550 U.S. at 555. Because Garcia failed to plead this particular defect theory in her complaint, this Court is not required to consider it. *See Bey v. Daimler Chrysler Servs. of N. Am.*, No. 04–6186, 2006 WL 361385, at *11 (D.N.J. Feb.15, 2006) ("[C]laims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment"); *see, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."); *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment"). Accordingly, the Court will not consider the lack of graspable handrails as an "additional defect theory," but will nonetheless weigh this fact as evidence of the dangerousness of the carpeting ripple, Garcia's primary defect theory.

### a. Existence of a Dangerous Condition

Defendants first argue that the carpeting ripple was not a dangerous condition because it was so small in size as to constitute a trivial or *de minimus* defect that does not give rise to a duty on the part of Defendants. (Doc. 36, at 8-10). In support of their contention that summary judgment is warranted here, Defendants cite numerous cases decided in Pennsylvania state courts holding that minor defects in sidewalks and other outdoor surfaces of half an inch or less are trivial and thus do not give rise to a duty on the part of the property owner. (Doc. 36, at 8-9 & n.2). However, these cases appear to be the exception rather than the rule. Unless obviously

trivial, the question of whether a defect is significant enough to render a property owner liable is an issue for a jury to determine in light of the facts of a particular case. *Breskin v. 535 Fifth Ave.*, 113 A.2d 316, 318 (Pa. 1955). Indeed, "Pennsylvania courts have largely avoided assigning any dividing line between trivial and non-trivial defects, whether along the railways or on streets or sidewalks, and whether on municipal or commercial properties." *Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 87 (Pa. Super. Ct. 2015), *appeal denied*, 117 A.3d 298 (Pa. 2015).

Counsel for Garcia adeptly distinguishes the circumstances in the case at bar from the cases cited in Defendants' brief in support of their motion for summary judgment that found a particular defect to be so trivial as to warrant summary judgment as a matter of law. (Doc. 39, at 10-12). As noted in the brief in opposition to Defendants' motion for summary judgment, the cases Defendants cite for the proposition that certain defects may be so trivial as to not give rise to any duty on the part of a landowner all pertain to conditions on outdoor surfaces such as sidewalks and driveways. (Doc. 36, at 8-9 & n.2). Indeed, it is well established that "[s]light irregularities in the surface of sidewalks . . . are unavoidable in a city, and are so common as not to constitute any undue hazard to pedestrians." *Van Ormer v. City of Pittsburgh*, 31 A.2d 503, 503 (Pa. 1943). Thus, "an elevation, a depression or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist," *Bosack v. Pittsburgh Railways Co.*, 189 A.2d 877, 880 (Pa. 1963), because it is physically and economically impractical to require "[o]wners of large areas of land . . . to police each and every square foot for minor depressions and protrusions." *Massman v. City of Philadelphia*, 241 A.2d 921, 923 (Pa. 1968). However, Defendants fail to explain how an irregularity on a large tract of land is akin to the indoor

carpeting ripple at issue here. Although slight defects on paved surfaces are so unavoidable that landowners cannot reasonably be expected to find every irregularity, Defendants provide no caselaw to suggest that slight variations in indoor carpeting height are similarly common and unavoidable.[2] Because the cases Defendants cite are factually distinguishable, this Court declines to find that the indoor carpeting ripple at issue here is trivial as a matter of law.

In addition to the differences between the outdoor surface defects deemed to be trivial in the cases Defendants cite and the indoor carpeting ripple at issue here, Plaintiff also points to certain evidence that Defendants failed to address in the brief in support of their motion for summary judgment. For instance, in characterizing the carpeting ripple as no more than half an inch high on the basis of the reports from Bergman and Defendants' expert Jody DeMarco, Defendants disregard the deposition testimony of Garcia and Ruiz, both of whom stated that the carpeting ripple was over an inch in height. (Doc. 35-8, at 35; Doc. 35-9, at 5; Doc. 36, at 8-10). Because the Court construes the facts in the light most favorable to Garcia—the non-moving party—at this summary judgment stage, it must be presumed that the carpeting ripple was over an inch high. (Doc. 35-8, at 35; Doc. 35-9, at 5). Thus, even if, as Defendants contend,

_____

[2] Defendants cite three cases where judgment was entered in favor of a defendant landowner with respect to an alleged indoor defect, but none of the cases were decided on the basis that the landowner did not owe a duty because the defect was trivial. (Doc. 36, at 9-10 (citing *Larkin v. Super Fresh Food Markets, Inc.*, 291 F. App'x 483 (3d Cir. 2008) (not precedential) (affirming summary judgment where plaintiffs failed to plead facts establishing that defendants had actual or constructive notice of the condition); *Gibbons v. Harris Amusement Co.*, 167 A. 250 (Pa. Super. Ct. 1933) (overturning jury verdict in favor of plaintiff who tripped on a rug due to the lack of any evidence of causation); *Ley v. Bowman & Co.*, 46 Dauphin 135 (Dauphin Cnty. C.C.P. 1938) (holding that plaintiff failed to establish causation where she alleged that she tripped on a wrinkle in the carpeting but did not see the wrinkle either before or after her fall and failed to provide evidence that the wrinkle existed))).

a "height differential of [half an inch] or less is *de minimis* and does not give rise to liability," a disputed material fact would remain as to whether the height differential of the carpeting ripple was indeed half an inch or less, and therefore summary judgment would be inappropriate. (Doc. 36, at 8). Furthermore, Defendants' motion for summary judgment and brief in support thereof ignores the context of the carpeting ripple, namely, that the defect was located by the second-floor entry to a staircase that violated building safety codes by lacking graspable handrails. (Doc. 38-4, at 20; Doc. 38-5, at 5-6). Plaintiff alleges that these stairway defects deprived Plaintiff of the opportunity to arrest her fall. (Doc. 38-5, at 5-6). Because Garcia has alleged facts sufficient to infer that the carpeting ripple occurred at a particularly perilous location, this Court is unwilling to find that the defect was trivial as a matter of law based on the height of the carpeting ripple alone.

### b. "Open and Obvious" Danger

Defendants next allege that they are entitled to summary judgment on the ground that the carpeting ripple was an "open and obvious" condition that they owed no duty to warn Garcia about. (Doc. 36, at 10-13). Under Pennsylvania law, no duty is owed for "physical harm caused to [invitees] by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender v. Fitterer,* 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343A).[3] However, "[t]he mere fact one engages in activity that has some inherent

---

[3] Pennsylvania courts treat the assumption-of-risk doctrine as a corollary to the broader duty analysis. *See Carrender,* 469 A.2d at 125 ("[T]o say that the invitee assumed the risk of

danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained." *Bullman v. Giuntoli*, 761 A.2d 566, 572 (Pa. Super. Ct. 2000).

Comment b to § 343A defines the terms "known" and "obvious" as follows:

> The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

> Restatement (Second) of Torts § 343A, cmt. b; *see also Carrender*, 469 A.2d at 123-24 (adopting the definitions in § 343A's definitions of "known" and "obvious").

Although the question of whether a danger is known or obvious is generally a question of fact for the jury, a court may determine as a matter of law "that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced h[er] injury." *Howell v. Clyde,* 620 A.2d 1107 (Pa. 1993).

Defendants move for summary judgment in their favor on the basis that Garcia allegedly chose to voluntarily confront an open and obvious danger by walking over the carpeting ripple that caused her fall despite observing the condition shortly after she arrived at Unit 1239A the night before, and that Garcia thereby assumed the risk of her injuries, negating any duty of care Defendants might have otherwise owed to her. (Doc. 36, at 12-13). Garcia, however, contends that while she may have observed the carpeting ripple previously, she never had the opportunity

---

injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.").

to appreciate the risk that it posed, particularly given the lack of evidence that Garcia was aware

that the staircase lacked adequate handrails. (Doc. 39, at 13). Alternatively, Garcia argues that

Defendants should have anticipated the harm that befell her even if the carpeting ripple was an

obvious defect.[4] (Doc. 39, at 13-14 (citing Restatement (Second) of Torts § 343A)). Specifically,

Garcia cites comment f to § 343A, which provides, in relevant part:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee . . . .
>
> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.
>
> Restatement (Second) of Torts § 343A, cmt. f; *see also Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546, 552 (Pa. 1978) (citing with approval comment f to § 343A).

---

[4] Garcia additionally contends that the doctrine of judicial estoppel bars Defendants from simultaneously claiming that the carpeting ripple was both *de minimus* and an "open and obvious" danger. (Doc. 39, at 12-13). Judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position," particularly where the party benefitted from its earlier position. *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990). This Court need not determine whether Defendants took irreconcilably inconsistent positions in the brief in support of their motion for summary judgment by claiming that the carpeting ripple was both *de minimus* and an "open and obvious," because they never previously asserted and benefitted from either position. *See United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001))), *as amended* (Mar. 8, 2005). Garcia's judicial estoppel argument therefore fails.

The Court finds both of Garcia's primary legal arguments to be sufficient to preclude summary judgment on the issue of whether she knowingly encountered an "open and obvious" danger.

First, although Garcia concedes that she was aware of the carpeting ripple before her fall, Defendants point to no facts evincing that Garcia appreciated "the probability and gravity of the threatened harm" that the situation presented. (Doc. 36, at 10-13; Doc. 39, at 12-14). Indeed, Garcia explicitly avers that she never comprehended the dangerousness of the carpeting ripple, in part because she did not connect the carpeting ripple with the increased likelihood that she could fall down the stairs and suffer serious injury because the staircase also lacked graspable handrails. (Doc. 35-8, at 32-34; Doc. 38, ¶¶ 5-6, 11). In this manner, although Garcia's knowledge of the carpeting ripple likely provided her notice of "some quantum of obvious danger, this framing too narrowly isolates the danger actually involved in this case." *Perasso v. Caesars Cove Haven, Inc.*, No. 3:10-CV-1476, 2012 WL 2121244, at *4 (M.D. Pa. June 12, 2012). While Garcia certainly may have confronted an open and obvious danger to some extent by continuing to walk over the carpeting ripple, it is far from clear that she comprehended the enhanced risk of a severe injury due to the location of the carpeting ripple in relation to the staircase and the lack of graspable staircase handrails, and thus the "probability and gravity" of a potential injury would not have necessarily been obvious or appreciated. *Perasso*, 2012 WL 2121244, at *4. Accordingly, in viewing the evidence in the light most favorable to Garcia, the nonmoving party, the Court finds that reasonable minds could disagree as to whether she appreciated the danger posed by the carpeting ripple, and therefore this Court cannot conclude as a matter of law that Defendants' duty of care owed to Garcia as an invitee

was abrogated when she voluntarily chose to encounter the carpeting ripple despite knowing of its existence.

Second, even if the danger posed by the carpeting ripple was known and obvious to Garcia, the Court nonetheless finds that a dispute of fact remains as to whether Defendants should have anticipated the harm and taken reasonable steps to warn or protect her. "[A]n invitee in certain circumstances must be protected even from obvious dangers." *Jones*, 394 A.2d at 552. As counsel for Garcia notes, several of the examples under which a landowner may not be relieved of the duty of reasonable care that are listed in comment f to § 343A appear to be applicable to the facts at hand. (Doc. 39, at 13-14). For instance, the carpeting ripple's location near the bedroom of Unit 1239A, which Garcia was likely to encounter when she got up in the middle of the night and in various states of wakefulness, gave Defendants reason to expect that Garcia's attention may be distracted or that she would forget about the carpeting ripple because she was not fully awake. (Doc. 39, at 13-14 (citing comment f to § 343A)). Likewise, the fact that the carpeting ripple was directly between the bedroom and the staircase and extended nearly across the width of the hallway gave Defendants reason to expect that Garcia would proceed to encounter the known or obvious danger, because the lack of alternative means to access the bedroom would lead a reasonable person in Garcia's position to deem the advantages of traversing the carpeting ripple as outweighing the apparent risk of doing so. (Doc. 38, ¶ 4) Restatement (Second) of Torts § 343A, cmt. f. Because Garcia has produced evidence sufficient to establish that Defendants should have anticipated the harm that befell her, regardless of whether or not Garcia encountered an open and obvious danger, it is for a jury to determine the question of Defendants' alleged negligence.

Accordingly, Defendants' second theory alleging that they owed no duty to Garcia also must fail.

### c.   Actual or Constructive Notice

Defendants' third and final argument for summary judgment in their favor is that they lacked actual or constructive notice of the carpeting ripple. (Doc. 36, at 13-15). Under § 343, a possessor of property is subject to liability for physical harm caused to an invitee by a condition on the land if, but only if, he "knows or by the exercise of reasonable care would discover the condition . . . ." Restatement (Second) of Torts § 343(a). Therefore, in a premises liability action involving a trip and fall, the relevant inquiry is whether the possessor had notice of the hazardous condition. Without notice of a dangerous or defective condition, a business owner cannot be liable to an invitee injured by that condition. The notice requirement can be satisfied by showing that a defendant "had a hand in creating the harmful condition, or had actual or constructive knowledge of such condition." *Estate of Swift v. Ne. Hosp. of Phila.,* 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citing *Moultrey v. Great A & P Tea Co.,* 422 A.2d 593, 598 (Pa. Super. Ct. 1980)). "Pennsylvania courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm." *Moultrey,* 422 A.2d at 596. Furthermore, "where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition . . . ." *Moultrey,* 422 A.2d at 596. In the absence of evidence tending to prove that the owner had actual notice of the condition, an invitee must establish constructive notice by "demonstrat[ing] that 'the condition existed for

such a length of time that in the exercise of reasonable care the owner should have known of it.'" *Sheil v. Regal Entm't Grp.*, 563 F. App'x 216, 218 (3d Cir. 2014) (not precedential) (quoting *Moultrey*, 422 A.2d at 596).

Defendants claim that Garcia "has adduced no evidence to establish that Defendants were aware of or created . . . any condition in the rug that caused her to trip and has similarly failed to establish actual or constructive notice of any defect on the part of the Defendants." (Doc. 36, at 14). In support of their assertion, Defendants point out that there had not been any complaints or recent repairs involving the carpeting in Unit 1239A that could serve to provide Defendants notice of the problem.[5] (Doc. 36, at 14-15).

---

[5] Defendants also argue that the sheer size of the Villas factored against a determination that Defendants had constructive notice of any defective conditions at Unit 1239A. (Doc. 36, at 14). However, as was the case with their argument that the carpeting ripple was trivial as a matter of law, Defendants again cite only to cases involving defects that occurred outdoors— such as holes and depressions in cemeteries, playgrounds, and golf courses—for the proposition that courts generally should not find that a landowner had constructive notice of a defect when the premises in question is particularly large. (Doc. 36, at 14). Although the size of the premises may factor into a court's constructive notice inquiry, other factors include "the nature of the business conducted [on the premises], the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Bremer v. W. W. Smith, Inc.*, 191 A. 395, 397 (Pa. Super. Ct. 1937). While these other factors may not support a finding that a landowner had constructive notice of a defect on a remote outdoor portion of a vast premises, here, they weigh in favor of a finding that Defendants had constructive notice of the alleged defects inside Unit 1239A. Because Unit 1239A was a rental unit, a large number of guests presumably used this portion of the premises and frequently encountered the staircase and the second-floor hallway, in particular. Furthermore, the Villas' guest services director David Sutton provided deposition testimony that "[w]henever someone checks out [the unit] gets cleaned immediately" by housekeeping, thus indicating that Defendants had an opportunity to remedy any defects inside Unit 1239A. (Doc. 38-8, at 3).

Garcia relies primarily on the theory that Defendants had constructive notice of the carpeting ripple. (Doc. 39, at 14). First, Garcia and Ruiz noticed the carpeting ripple shortly after checking into Unit 1239A, thus evincing that the defect was present before they arrived at the Villas. (Doc. 35-8, at 31-33). This conclusion is further supported by Bergman's expert report, which finds that the carpeting ripple developed over time due to heavy use from people stopping, starting, and turning on that spot while exiting and entering the stairway throughout the nineteen years of the carpet's existence. (Doc. 38-4, at 14). Because Garcia has produced evidence that the carpeting ripple developed over a prolonged period of time, it necessarily follows that Defendants could have had an opportunity to discover and remedy the defect if they were exercising reasonable care. *See Moultrey*, 422 A.2d at 596. Moreover, Garcia cites to the deposition of guest services director David Sutton, who states that housekeeping immediately cleans each unit "[w]henever someone checks out . . . ." (Doc. 38-8, at 3). As part of their cleaning of the units between occupants, the Villas' housekeepers were instructed to look for stretched carpeting, a condition that Defendants' vice president of operations John Briggs indicated occurs fairly regularly. (Doc. 38-9, at 3-4). Given this deposition testimony, it is reasonable to conclude that Defendants had an opportunity to remedy the carpeting ripple because housekeeping cleaned Unit 1239A before Garcia and Diaz arrived. In evaluating all evidence in the light most favorable to Garcia, it is plausible that a reasonable jury could find sufficient facts to establish constructive notice of the carpeting ripple.[6]

-----

[6] Alternatively, Briggs's deposition testimony may also support a finding that Defendants had actual notice of the carpeting ripple defect. (Doc. 38-9, at 3-4). Briggs testified that

Accordingly, Defendants' argument that they lacked actual or constructive notice of the carpeting ripple also falls short at this summary judgment stage.

IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' motion for summary judgment (Doc. 35).

An appropriate Order follows.

Dated: August 26, 2016                                    *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States Magistrate Judge**

---

housekeeping is asked to look for carpet stretching, and further clarified that "[i]f the carpet has a pull or has a mound and it looks like there's too much carpet for the space, then we bring in a company who we deal with all the time, and they kick it and stretch it back out." (Doc. 38-9, at 3-4). "[U]nder Pennsylvania law, 'where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it.'" *Sheil*, 563 F. App'x at 219 (quoting *Moultrey,* 422 A.2d at 596).